IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

| | |
|---|---|
| NAVAJO NATION, a federally recognized Indian Tribe;  NAVAJO NATION HUMAN RIGHTS COMMISSION;  LORENZO BATES;  JONNYE KAIBAH BEGAY;  GLORIA ANN DENNISON;  TRACY DEE RAYMOND;  and BESSIE YAZZIE WERITO, | CIVIL ACTION NO. |
|      Plaintiffs, | |
| v. | COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF |
| SAN JUAN COUNTY, NEW MEXICO; SAN JUAN COUNTY BOARD OF COMMISSIONERS; JOHN BECKSTEAD, in his official capacity as Chairman; TERRI FORTNER, in her official capacity as Commissioner; STEVE LANIER, in his official capacity as Commissioner; MICHAEL SULLIVAN, in his official capacity as Commissioner; GLOJEAN TODACHEENE, in her official capacity as Commissioner; and TANYA SHELBY, in her official capacity as COUNTY CLERK, | |
|     Defendants. | |

## I.  INTRODUCTION

1.   On December 21, 2021, the San Juan County, New Mexico Board of Commissioners

(the "Board of Commissioners" or the "Board") enacted a redistricting plan for San Juan County's

Board of Commissioner districts (the "2021 Redistricting Plan"), which has the effect of diluting

the ability of Non-Hispanic American Indian or Alaska Native voters of a single race ("American Indians")[1] to elect candidates of their choice.

2.    The majority of the land in San Juan County, just under two-thirds, is located on the tribal lands of the Navajo Nation, with American Indians constituting the largest single population group in the County. Citizens of the Navajo Nation ("Navajos") comprise the overwhelming majority of the County's American Indian residents.

3.    Like many regions with large populations of American Indian voters, New Mexico and San Juan County have a lengthy history of submerging and suppressing the participation of those voters in the political process.

4.    Border communities such as Farmington have a well-documented history of racism and violence against Navajo and other American Indian residents.

5.    The Board of Commissioners of San Juan County, New Mexico plays a leading role in the County's government. The Board of Commissioners is the legislative body of the county determining issues critical to county residents' daily lives such as budgeting for county services and roads, taxing, issuing of bonds, zoning, and adopting other regulations by ordinance. The Board is comprised of five Commissioners elected from single-member districts.

6.    In the past decade, the County's population has decreased, driven by the loss of Non-Hispanic White residents. During that same period, the population of American Indian residents, particularly Navajo residents, has increased.

---

[1]  For ease of reference, the balance of the Complaint will refer to the Non-Hispanic American Indian or Alaska Native population in San Juan County as "American Indian" because the population is overwhelmingly comprised of citizens of the Navajo Nation. Similarly, all references will be to "American Indians" of a single race unless otherwise stated.

7.   Despite comprising fewer than 40 percent of the County's residents, Non-Hispanic White voters control the election outcomes in four out of the five Board of Commissioner districts.

8.   Over the past decade, American Indian voters have succeeded in electing their candidate of choice only in District 1, which has been packed so that more than 80 percent of its Voting Age Population ("VAP") is American Indian.

9.   The unlawful dilution has come at the expense of American Indian voters in District 2, in which two Navajo candidates have unsuccessfully run for office in elections held in 2014 and 2018. In both elections, widespread and systematic bloc voting by Non-Hispanic White voters defeated the Navajo candidates, resulting in the election of a Non-Hispanic White Commissioner from District 2.

10.  The number of voting-age American Indians in San Juan County is sufficiently large and geographically compact to constitute a majority in at least one additional single-member district; the County's American Indian voters are politically cohesive; and the County's Non-Hispanic White residents vote sufficiently as a bloc to enable them usually to defeat the preferred candidates of American Indian voters, particularly in District 2.

11.  Under the totality of the circumstances, including the historical, socioeconomic and electoral conditions of San Juan County, the 2021 Redistricting Plan in effect for Board of Commissioner elections from 2022 to 2030 violates Section 2 of the Voting Rights Act, 52 U.S.C. § 10301 ("Section 2"). *Thornburg v. Gingles*, 478 U.S. 30 (1986).

12.  For these reasons, Plaintiffs seek an order: (i) declaring that the 2021 Redistricting Plan in effect for Board of Commissioner elections from 2022 through 2030 violates the Voting Rights Act; (ii) preliminarily and permanently enjoining Defendants from conducting future

elections under that districting plan; (iii) requiring implementation of a new districting plan that is consistent with the Act's requirements; and (iv) providing such additional relief as is appropriate.

## II. PARTIES

**The Plaintiffs**

13.  Plaintiff NAVAJO NATION is a federally recognized Indian tribe whose reservation and off-reservation trust lands are located in the states of New Mexico, Arizona, and Utah. Plaintiff NAVAJO NATION has the purpose of promoting the cultural, economic, political and social welfare of its citizens. Citizens of the NAVAJO NATION include U.S. citizens who are registered to vote or are eligible to register to vote in San Juan County, New Mexico for federal, state and local elections. The voting strength of citizens of the NAVAJO NATION is diluted by the Section 2 violations alleged herein. Plaintiff NAVAJO NATION sues in a representational capacity on behalf of its affected citizens that it represents. Neither the claims asserted nor the relief requested by Plaintiff NAVAJO NATION requires the participation in this litigation of its individual citizens who reside in San Juan County.

14.  Plaintiff NAVAJO NATION HUMAN RIGHTS COMMISSION is an Office within the legislative branch of the Navajo Nation and operates as a clearinghouse to administratively address discriminatory actions against citizens of the Navajo Nation and to promote the cultural, economic, political and social welfare of citizens of the Navajo Nation. Citizens of the Navajo Nation include U.S. citizens who are registered to vote or are eligible to register to vote in San Juan County, New Mexico for federal, state and local elections. The voting strength of citizens of the Navajo Nation is diluted by the Section 2 violations alleged herein. Plaintiff NAVAJO NATION HUMAN RIGHTS COMMISSION sues in a representational capacity on behalf of the

4

affected citizens of the Navajo Nation it represents. Neither the claims asserted nor the relief requested by Plaintiff NAVAJO NATION HUMAN RIGHTS COMMISSION requires the participation in this litigation of individual citizens of the Navajo Nation who reside in San Juan County.

15. Plaintiff LORENZO BATES is a citizen of the Navajo Nation and a resident and registered voter of San Juan County, New Mexico. He previously served as the Speaker of the Navajo Nation Council and served 16 years as a member of the Council. He resides and votes in San Juan County Commissioner District 2 under the 2021 Redistricting Plan. He was a candidate in 2018 in the general election for Commissioner District 2 under the districting plan in effect before the adoption of the 2021 Redistricting Plan (the "Previous Plan"). He was supported by the majority of American Indian voters but nevertheless was defeated by the Non-Hispanic White candidate as a result of Non-Hispanic White bloc voting against him. Because of the violation of Section 2 of the Voting Rights alleged in this complaint, he and other American Indian voters in District 2 do not have an equal opportunity to elect candidates of their choice.

16. Plaintiff Dr. JONNYE KAIBAH BEGAY, Ph.D., is a citizen of the Navajo Nation and a resident and registered voter of San Juan County, New Mexico. She is Secretary/Treasurer of the Shiprock Chapter, which is one of the two most populous chapters in the Navajo Nation. She resides and votes in San Juan County Commissioner District 1 under the 2021 Redistricting Plan. Because of the violation of Section 2 of the Voting Rights alleged in this complaint, she and other American Indian voters in District 1 have had their voting power diminished because of the packing of American Indian voters into the district.

17.  Plaintiff GLORIDA ANN DENNISON is a citizen of the Navajo Nation and a resident and registered voter of San Juan County, New Mexico. She resides and votes in San Juan County Commissioner District 2 under the 2021 Redistricting Plan. Because of the violation of Section 2 of the Voting Rights alleged in this complaint, she and other American Indian voters in District 2 do not have an equal opportunity to elect candidates of their choice.

18.  Plaintiff TRACY DEE RAYMOND is a citizen of the Navajo Nation and a resident and registered voter of San Juan County, New Mexico. Mr. Raymond is Chair of the San Juan River Farm Board and is the farm board representative for Nenahnezad Chapter. He resides and votes in San Juan County Commissioner District 1 under the 2021 Redistricting Plan. Because of the violation of Section 2 of the Voting Rights alleged in this complaint, he and other American Indian voters in District 1 have had their voting power diminished because of the packing of American Indian voters into the district.

19.  Plaintiff BESSIE YAZZIE WERITO is a citizen of the Navajo Nation and a resident and registered voter of San Juan County, New Mexico. She resides and votes in San Juan County Commissioner District 2 under the 2021 Redistricting Plan. Because of the violation of Section 2 of the Voting Rights alleged in this complaint, she and other American Indian voters in District 2 do not have an equal opportunity to elect candidates of their choice.

**The Defendants**

20.  Defendant SAN JUAN COUNTY, NEW MEXICO (the "County"), is a geographical and political subdivision of the State of New Mexico, located within the District of New Mexico. This action is brought against those officials of the County who are charged with ensuring its

compliance with applicable state and federal voting laws, including Section 2 of the Voting Rights Act.

21.   Defendant SAN JUAN COUNTY BOARD OF COMMISSIONERS (the "Board of Commissioners" or the "Board"), established under New Mexico law, is the governing authority of the County. N.M. Stat. Ann. § 4-38-1. The Board of Commissioners provides local government services in San Juan County and has the legislative power to adopt laws affecting its affairs and local government. In particular, the Board of Commissioners is responsible for adopting the redistricting plan governing the election of its members, including the redistricting plan at issue in this case, the 2021 Redistricting Plan, through its authority to divide the county "into single-member districts," which "shall be made once immediately following each federal decennial census." N.M. Stat. Ann. § 4-38-3.

22.   Defendants JOHN BECKSTEAD, TERRI FORTNER, STEVE LANIER, MICHAEL SULLIVAN, and GLOJEAN TODACHEENE are the members of the Board of Commissioners. Each Defendant is sued in his or her official capacity.

23.   Defendant TANYA SHELBY is the San Juan County Clerk (the "County Clerk"). The County Clerk serves as an *ex-officio* member of the Board of Commissioners. N.M. Stat. Ann. §§ 4-40-3 to -8. The County Clerk is the Chief Elections Officer for San Juan County. *See* THE NEW MEXICO COUNTY COMMISSIONER HANDBOOK 145 at A.4.3 (Dec. 2020 ed.). In that capacity, the County Clerk has statutory powers, duties and responsibilities concerning the conduct of elections held in San Juan County; the County Clerk oversees and is responsible for the administration of elections in the county, including elections for the Board of Commissioners under the 2021

Redistricting Plan at issue in this case. *See* N.M. Stat. Ann. Chapt. 1, *passim*. Defendant SHELBY is being sued in her official capacity.

### III.   JURISDICTION

24.   This Court has jurisdiction of this action pursuant to (a) 28 U.S.C. § 1343(a), because this action seeks to redress the deprivation, under color of state law, of rights, privileges and immunities secured by the Voting Rights Act; and (b) 28 U.S.C. § 1331, because this action arises under the laws of the United States.

25.   This Court has jurisdiction to grant both declaratory and injunctive relief, pursuant to 28 U.S.C. §§ 2201 and 2202.

26.   This Court has personal jurisdiction over the Defendants, all of whom, on information and belief, are citizens of the State of New Mexico who reside within this District.

27.   Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(2), because a substantial part of the events or omissions giving rise to the claim occurred in this district.

### IV.   FACTUAL BACKGROUND

28.   Section 2 of the Voting Rights Act, 52 U.S.C. § 10301(a), prohibits any "standard, practice, or procedure" that "results in a denial or abridgement of the right of any citizen of the United States to vote on account of race or color." A violation of Section 2 is established if it is shown that "the political processes leading to nomination or election" in the jurisdiction "are not equally open to participation by [a minority] in that its members have less opportunity than other members of the electorate to participate in the political process and to elect representatives of their choice." *Id.* at § 10301(b). An electoral regime that dilutes the voting strength of a minority

community may deprive the members of that community of their right to an equal opportunity to elect representatives of their choice, within the meaning of Section 2.

29.  In San Juan County, New Mexico, American Indians are the largest population group, comprising 39.8 percent of the total population and 38.7 percent of the VAP.

30.  The 2021 Redistricting Plan distributes those citizens in a way that produces (a) one packed Board of Commissioners district with a grossly excessive American Indian majority of 82.7 percent of the total population and 83.3 percent of the VAP; (b) a Board of Commissioners district in which American Indians comprise 52.3 percent of the total population and of the VAP, but which is ineffective in providing American Indians an equal opportunity to elect their candidates of choice; and (c) three other Board of Commissioner districts in which American Indians are ineffective electoral minorities.

31.  According to 2015 American Community Survey ("ACS") five-year estimates, Navajos comprise approximately 92 percent of all American Indians who reside in San Juan County, New Mexico. *See* U.S. Census Bureau, 2015 ACS 5-Year Estimates Data Profiles, table B01003.

32.  Specifically, according to the 2015 five-year ACS estimates, persons who identified as Navajo alone comprised 43,103 out of 46,829 American Indians of a single race (92.0 percent), and persons who identified as Navajo alone or in combination with one or more other affiliations comprised 45,483 out of 49,042 Americans of one or more races (92.7 percent). *See* U.S. Census Bureau, 2015 ACS 5-Year Estimates Data Profiles, table B01003.

33.   The 2021 Redistricting Plan violates Section 2 of the Voting Rights Act, because it denies San Juan County's Navajo citizens and other American Indian voters an equal opportunity to participate in the political process and to elect representatives of their choice.

**A.   San Juan County Demographics**

34.   San Juan County is located in the northwest corner of New Mexico, sharing borders with three other states in the area known as the "Four Corners" region between Arizona, Colorado, New Mexico and Utah. *See* N.M. Stat. Ann. § 4-24-1.

35.   Indian reservation and off-reservation trust lands comprise nearly two-thirds of the County's land area; the Navajo Nation's lands make up approximately 60.45 percent and the Ute Mountain Ute Tribe an additional 2.93 percent. *See* San Juan County, NM, *About Us*, *available at* https://www.sjcounty.net/about-us.

36.   The County's population has declined over the past decade.

37.   According to the 2010 Census, the County had a total population of 130,044. According to the 2020 Census, the County had a total population of 121,661, which is a decrease of 8,383 from 2010.

38.   During the past decade, however, the American Indian population has increased in the County so that they are now the largest racial or ethnic group. *See* Figure 1.

39.   According to the 2010 Census, there were 46,321 American Indians, comprising 35.6 percent of the County's total population.

40.   According to the 2020 Census, there were 48,413 American Indians, comprising 39.8 percent of the County's total population.

41. According to the 2020 Census, the County had a VAP of 89,664, of whom 34,663 (38.7 percent) were American Indians.

42. The 2020 Census demographics for San Juan County are as follows:

**Figure 1 – San Juan County Population (2020 Census)**

|  | Total Population | | Voting Age Population (VAP) | |
|---|---|---|---|---|
| Non-Hispanic American Indian and Alaska Native Alone | 48,413 | 39.8% | 34,663 | 38.7% |
| Non-Hispanic White Alone | 43,583 | 35.8% | 35,509 | 39.6% |
| Non-Hispanics of Some Other Race Alone | 1,947 | 1.6% | 1,494 | 1.7% |
| Hispanics of any Race | 23,630 | 19.4% | 15,477 | 17.3% |
| Two or More Races | 4,088 | 3.4% | 2,521 | 2.8% |
|  |  |  |  |  |
| Total | 121,661 |  | 89,664 |  |

Source: U.S. Census, 2020 Census Redistricting Data (Public Law 94-171) Summary File, Hispanic or Latino, and Not Hispanic or Latino by Race, Tables P2 and P4.

43. Figure 2 is a choropleth map depicting the concentration of the American Indian VAP in San Juan County by precinct, according to the 2020 Census. Precincts with darker colors indicate a higher percentage of American Indians of voting age. Precincts with lighter colors depict a smaller percentage of American Indian VAP, comprised primarily of Non-Hispanic Whites and Latinos.

44. As Figure 2 depicts, the highest concentration of American Indian VAP in San Juan County is found on Navajo Nation lands in the western half of the County and on off-reservation trust lands to the South of Farmington stretching south and east to the southeastern end of the County.

11

**Figure 2 – American Indian VAP in San Juan County, by Precinct (2020 Census)**



45.  As Figure 2 depicts, the precincts in Farmington generally have a smaller percentage of American Indians of voting age. According to the 2020 Census, of the 33,977 people of voting age who resided in Farmington, there were 16,000 Non-Hispanic Whites (47.1 percent), 9,234 American Indians (27.2 percent), 6,740 Latinos (19.8 percent), 873 of some other race (2.6 percent), and 1,130 of two or more races (3.3 percent).

46.  As Figure 2 depicts, the lowest percentages of American Indian VAP are in the northeastern area of San Juan County, which includes communities such as the county seat of Aztec (4,725 VAP) and the town of Bloomfield (5,217 VAP), in which the American Indian VAP is at 9.6 percent (455) and 23.4 percent (1,219), respectively.

**B.    The San Juan County Board of Commissioners and its Enactment of the 2021 Redistricting Plan.**

47.    The County's Board of Commissioners is comprised of five members elected from single-member districts to four-year, staggered terms. N.M. Const. art. X, §§ 2, 7; N.M. Stat. Ann. §§ 4-38-2, -3, -6.

48.    To ensure that Board of Commissioner terms are staggered, New Mexico law provides that "the terms of no more than three commissioners shall expire in the same year." N.M. Const. art. X, § 2(C).

49.    In San Juan County, Commissioners from Districts 1 and 2 are chosen in mid-term election years, including 2022; Commissioners from Districts 3, 4, and 5 are chosen in Presidential election years, with the next election scheduled for 2024. *See* Office of the N.M. Sect'y of State, 2022 Candidate Information Guide 20 (ver. 1.5 published Jan. 14, 2022), *available at* https://www.sos.state.nm.us/wp-content/uploads/2022/01/2022-Primary-Candidate-Guide.pdf.

50.    Commissioners must reside in the district from which they are elected. N.M. Const. art. X, § 7; N.M. Stat. Ann. § 4-38-6.

51.    The elections for the Board of Commissioners are partisan, and primary elections are held to determine which candidates advance to the general election.

52.    The term of a member of the Board of Commissioners commences "on the first day of January next after his [or her] election." N.M. Const. art. XX, § 3.

53.    After a Commissioner has served two consecutive four-year terms on the Board of Commissioners, they are "ineligible to hold any county office for two years thereafter." N.M. Const. art. X, § 2.

54. State law requires that the Board of Commissioners redistrict after "each federal decennial Census." N.M. Stat. Ann. § 4-38-6. Counties such as San Juan, which has a population exceeding thirteen thousand, must be "divided by the board of county commissioners into as many compact single-member districts as there are board members to be elected." *Id.*

55. Commissioner districts must be "compact, contiguous and as nearly equal in population as practicable." N.M. Const. art. X, § 7; *see also* N.M. Stat. Ann. § 4-38-6 (same).

56. San Juan County contracted with Rod Adair of NM Demographic Research to assist the Board of Commissioners with the process of redistricting the Board's districts following the U.S. Census Bureau's release of the P.L. 94-171 redistricting data from the 2020 decennial census. The guidelines to be used to draw the districts were stated to include four criteria:

 a. "Districts shall be equal in population as practicable, with a population that deviates plus or minus five percent from the ideal. San Juan County's population was 121,661 therefore the ideal population would be 24,332";

 b. "Districts shall not be comprised of split precincts";

 c. "Districts shall be contiguous precincts and reasonably compact, with an attempt to preserve communities of interest"; and

 d. "Not dilute a protected minority's voting strength." San Juan County Commission, Minutes 3 (Dec. 7, 2021) ("12/7/21 Minutes"), *available at* https://www.sjcounty.net/home/showpublisheddocument/4616/637770638224530 000.

57. On November 9, 2021, the Board of Commissioners received a presentation on three draft redistricting maps for the Board's consideration. The Board of Commissioners scheduled a

public hearing on the draft maps for November 30, 2021, with public feedback to be presented to the Board of Commissioners following the hearing. *See* San Juan County Commission, Minutes 5 (Nov. 9, 2021), *available at* https://www.sjcounty.net/home/showpublisheddocument/4513/637746459019600000.

58.  On November 30, 2021, a public hearing was held on the Board of Commissioner's three draft redistricting maps and a fourth map prepared by the Navajo Nation Human Rights Commission ("NNHRC Proposed Plan").

59.  The hearing was conducted by Rod Adair and County staff. "Due to public comment received at the meeting, a fifth plan was developed for consideration." 12/7/21 Minutes, *supra*, at 3.

**Figure 3 – NNHRC Proposed Plan (2020 Census)**

| District | Total Population | Deviation | Percent Deviation | Total VAP | American Indian VAP | American Indian Share of VAP |
|---|---|---|---|---|---|---|
| 1 | 24,387 | 55 | 0.23% | 17,886 | 11,318 | 63.3% |
| 2 | 24,359 | 27 | 0.11% | 18,047 | 11,403 | 63.2% |
| 3 | 24,764 | 432 | 1.77% | 18,513 | 2,194 | 11.9% |
| 4 | 24,638 | 306 | 1.26% | 18,206 | 3,451 | 19.0% |
| 5 | 23,513 | -819 | -3.37% | 17,012 | 6,297 | 37.0% |

Source: U.S. Census, 2020 Census Redistricting Data (Public Law 94-171) Summary File, Hispanic or Latino, and Not Hispanic or Latino by Race, Tables P2 and P4.

60.  The NNHRC Proposed Plan does not split any precincts.

61.  All precincts are contiguous with one another. The five single-member districts in the NNHRC Proposed Plan are reasonably compact.

62. The population deviations for each district in the NNHRC Proposed Plan fall within the Board's guidelines of five percent or less, with District 5 having the greatest deviation at -3.37 percent. The NNHRC Proposed Plan's total deviation is 5.14 percent, with the smallest population deviations in Districts 1 and 2. *See* Figure 3.

**Figure 4 – NNHRC Proposed Plan**



63.  Figure 4 depicts the NNHRC Proposed Plan. It would have created two majority-American Indian districts that more evenly distributed the American Indian population: District 1, with an American Indian VAP of 63.3 percent; and District 2, with an American Indian VAP of 63.2 percent. The NNHRC Proposed Plan preserved Navajo communities of interest.

64.  Districts 1 and 2 in the 2021 Redistricting Plan are more irregularly shaped than those in the NNHRC proposed plan, as depicted in Figure 5.

**Figure 5 – 2021 Redistricting Plan (Adopted)**





65.  Under the 2021 Redistricting Plan, Districts 1, 2 and 5 are less compact than under the NNHRC Proposed Plan.

66.  Although the population deviations for each district in the 2021 Redistricting Plan fall within the Board's guidelines of five percent or less, District 1 has the largest population deviation, -4.27 percent, resulting from the Board's effort to exclude Non-American Indian voters in the northern portion of Farmington and instead pack American Indian voters in the southwestern portion of the County.

67.  The 2021 Redistricting Plan's total population deviation of 5.31 percent is greater than under the NNHRC Proposed Plan. *See* Figure 6.

**Figure 6 – 2021 Redistricting Plan (2020 Census)**

| District | Total Population | Deviation | Percent Deviation | Total VAP | American Indian VAP | American Indian Share of VAP |
|----------|-----------------|-----------|-------------------|-----------|---------------------|------------------------------|
| 1 | 23,294 | -1038 | -4.27% | 17,073 | 14,223 | 83.31% |
| 2 | 24,549 | 217 | 0.89% | 18,023 | 9,424 | 52.29% |
| 3 | 25,187 | 855 | 3.51% | 18,837 | 2,241 | 11.90% |
| 4 | 24,551 | 219 | 0.90% | 18,229 | 2,824 | 15.49% |
| 5 | 24,080 | 252 | -1.04% | 17,502 | 5,951 | 34.00% |

Source: U.S. Census, 2020 Census Redistricting Data (Public Law 94-171) Summary File, Hispanic or Latino, and Not Hispanic or Latino by Race, Tables P2 and P4.

68.  Figure 7 compares the NNHRC Proposed Plan with the 2021 Redistricting Plan to illustrate how the 2021 Redistricting Plan packs American Indian voters into the much more irregularly shaped District 1, resulting in reduced compactness for Districts 1, 2, and 5.

**Figure 7 – District Boundaries of the NNHRC Proposed Plan
Compared to the 2021 Redistricting Plan**



NNHRC Proposed Plan                    2021 Redistricting Plan (Adopted)

69. Figure 8 is a set of two dot density maps depicting the population densities of American Indian VAP in districts in the NNHRC Proposed Plan and the 2021 Redistricting Plan.

**Figure 8 – Dot Density of American Indian VAP in the
NNHRC Proposed Plan Compared to the 2021 Redistricting Plan**



NNHRC Proposed Plan                    2021 Redistricting Plan (Adopted)

70. Figure 8 illustrates how the 2021 Redistricting Plan carves out American Indian voters in the southwestern portion of the county to include in District 1 instead of including the area north of Farmington, which has a higher density of VAP that is not American Indian (depicted by the blue dots in the easternmost portion of the NNHRC Proposed Plan). The net effect is that American Indian VAP is packed into District 1 to create a district with an American Indian VAP exceeding 80 percent.

71. Figure 8 illustrates how the 2021 Redistricting Plan meets equal population requirements in District 2 by pulling in more Non-Hispanic White voters from Farmington into the district than under the NNHRC Proposed Plan. The net effect is that the 2021 Redistricting Plan reduces the American Indian VAP by more than 10 percentage points compared to the NNHRC Proposed Plan so that District 2 has a bare majority American Indian VAP, diluting the ability of American Indian voters to elect their candidate of choice.

72. At the Board of Commissioners' December 7, 2021 meeting, Rod Adair "presented a summary of the proposed plans and maps to the Commission." The Board was informed that the Navajo Nation Human Rights Commission unanimously passed a resolution supporting the NNHRC Proposed Plan. Commissioners heard from four members of the public who also supported the NNHRC Proposed Plan. Following questions by the Commissioners, the Board tabled the redistricting plan. 12/7/21 Minutes, *supra*, at 3.

73. On December 21, 2021, the Board of Commissioners held a hearing that included a discussion of the redistricting plan. At that meeting, the Board received a comment letter from the ACLU of New Mexico and presented it to the County Clerk to include in the record. San Juan County Commission, Minutes 2 (Dec. 21, 2021) ("12/21/21 Minutes"), *available at*

https://www.sjcounty.net/home/showpublisheddocument/4614/637770636490930000.        The

comment letter expressed concern "that several map proposals up for adoption ignore the

redistricting preferences of the Navajo Nation by placing the majority of Native American voters

into a single San Juan County district, when, in fact, Native American voter numbers suffice to

constitute a majority in two contiguous districts." It further explained, "Because San Juan County

incorporates the traditional homelands of the Navajo Nation, Commissioners must include and

respect the redistricting preferences of Navajo Nation leadership."

74. County Manager Mike Stark also read public comments to the Board of

Commissioners, including a comment that "Leonard Gorman, Navajo Nation Human Rights

Commission Executive Director, expressed his support for the plan submitted by the Navajo

Nation Human Rights Commission and submitted two resolutions for record in support of the plan

presented to the Commission prior to the December 7th Regular Meeting." 12/21/21 Minutes,

*supra*, at 2.

75. Following receipt of comments and further discussion, the Board of Commissioners

did not vote on the NNHRC Proposed Plan.

76. Instead, the Board adopted the 2021 Redistricting Plan, Plan A-5, by a 4 to 1 vote.

12/21/21 Minutes, *supra*, at 2.

77. Because of the unlawful packing of Navajo voters in the 2021 Redistricting Plan

adopted by the Board of Commissioners, Navajo voters have an equal opportunity to elect the

candidates of their choice in only one district, District 1, instead of in two districts, such as those

included in the NNHRC Proposed Plan.

78.  Districts 2, 3, 4, and 5 do not provide an opportunity for Navajo voters to elect candidates of their choice.

79.  This is because the district with the second largest Navajo population, District 2, will not "perform" or elect Navajo candidates of choice due to lower political participation of Navajo voters in this district.

80.  District 2 has a nominal American Indian majority of the VAP at 52.29 percent.

81.  Navajo voters do not have an equal opportunity to elect their candidates of choice in District 2 because of barriers to political participation, including: the socio-economic effects of past and present discrimination; turnout disparities; and legally significant racially polarized voting in which non-Hispanic white voters vote sufficiently as a bloc to usually defeat the candidate of choice of Navajo voters.

82.  Thus, the 2021 Redistricting Plan unnecessarily concentrates Navajo voters into District 1, where the American Indian VAP creates an excessive majority of 83.31 percent, as a way to dilute Navajo voters.

83.  As demonstrated by the NNHRC Proposed Plan, the Board of Commissioners districts could easily be redrawn to create *two* reasonably compact majority-Navajo districts that more evenly distribute the American Indian residents with a VAP percent in the mid-60s.

84.  Under the NNHRC plan, both of these districts with mid-60s American Indian VAP would be able to elect candidates of choice as real opportunity districts.

**C.   San Juan County Board of Commissioners Election History under the Previous Plan.**

85.  Members of the current Board of Commissioners were elected under the Previous Plan. The Previous Plan was used for San Juan County's elections from 2012 until 2020.

86.  Navajo candidates for the Board of Commissioners have had very limited success under the Previous Plan.

87.  No more than one Navajo has ever held a seat on the Board of Commissioners at any time.

88.  The only Navajo candidates elected to the Board of Commissioners under the Previous Plan were elected from District 1, which packed Navajo voters into one district instead of providing Navajo voters with two reliably performing ability-to-elect districts coextensive with most of the Navajo Nation's lands that are in the western half of the County.

89.  Although the American Indian population in San Juan County is the largest racial or ethnic group in San Juan County, the Previous Plan resulted in the election of four Non-Hispanic white Commissioners and just one Navajo Commissioner to the Board of Commissioners:

   a.  District 1:   GloJean Todacheene (Navajo);

   b.  District 2:   Michael Sullivan (Non-Hispanic White);

   c.  District 3:   Steve Lanier (Non-Hispanic White);

   d.  District 4:   Terri Fortner (Non-Hispanic White); and

   e.  District 5:   John Beckstead (Non-Hispanic White).

90.  Despite having a majority of its area located on the Navajo Nation, District 2 under the Previous Plan has consistently elected a Non-Hispanic White candidate to the Board of Commissioners.

91.  The dilution has resulted from the inclusion of a large voting bloc of Non-Hispanic White voters, the overwhelming majority of whom have not supported the candidate of choice of American Indian voters.

92.  Since 2012, there have been two elections for Commissioners from Districts 1 and 2 under the Previous Plan: in 2014 and in 2018.

93.  In the other election years under the Previous Plan (2012, 2016, and 2020), there were elections for Commissioners from Districts 3, 4 and 5. *See* San Juan County, "Past Election Results: 2010s Elections" (listing Commission elections since 2010), *available at* https://www.sjcounty.net/government/county-clerk/election-department/general-information/past-election-results/-folder-1050.

94.  Every Navajo candidate who has run for the Board of Commissioners from District 2 under the Previous Plan has been defeated by a Non-Hispanic White candidate.

95.  In the 2014 General Election, Ervin Chavez (Navajo) was defeated by Margaret McDaniel (Non-Hispanic White) for the District 2 seat on the Board of Commissioners. The election was characterized by legally significant racial bloc voting by Non-Hispanic White voters.

96.  In the 2018 General Election, Ervin Chavez (Navajo) and Lorenzo Bates (Navajo) were defeated by Michael Sullivan (Non-Hispanic White) for the District 2 seat on the Board of Commissioners. The election was characterized by legally significant racial bloc voting by Non-Hispanic White voters.

## V. <u>VOTE DILUTION UNDER THE 2021 REDISTRICTING PLAN</u>

### A.  *Thornburg v. Gingles*

97.  The U.S. Supreme Court, in *Thornburg v. Gingles*, 478 U.S. 30, 50-51 (1986), identified three necessary preconditions ("the *Gingles* preconditions") for a claim of vote dilution under Section 2 of the Voting Rights Act:

(1) the minority group must be "sufficiently large and geographically compact to constitute a majority in a single-member district";

(2) the minority group must be "politically cohesive"; and

(3) the majority must vote "sufficiently as a bloc to enable it . . . usually to defeat the minority's preferred candidate."

98. San Juan County's American Indian population is sufficiently numerous and geographically compact to allow for the creation of two properly apportioned, single-member districts for electing members of the Board of Commissioners, in both of which American Indian voters would constitute a majority of both the total population and the VAP.

99. The County's American Indian voters are politically cohesive, having voted overwhelmingly for Navajo candidates over other candidates in recent countywide elections and in general elections for Commissioners representing Districts 1 and 2 under the Previous Plan.

100. Countywide elections and elections in Districts 1 and 2 under the Previous Plan show a clear pattern of racially polarized voting. Although American Indian voters are politically cohesive, bloc voting by other members of the electorate consistently defeats the candidates preferred by American Indians in countywide and in District 2 elections. Estimated levels of Non-Hispanic White support in countywide elections and elections in District 2 under the Previous Plan are insufficient for American Indian candidates of choice to be elected in District 2.

101. Each of the American Indian candidates for Board of Commissioners outside of District 1 in the Previous Plan was defeated by a Non-Hispanic White opponent.

**B.   Totality of the Circumstances**

102. In addition to the facts that satisfy the three *Gingles* preconditions, the totality of the circumstances in this case support Plaintiffs' claim that American Indian residents of San Juan County have less opportunity than other members of the electorate to participate in the political process and elect Board of Commissioner candidates of their choice, in violation of Section 2 of the Voting Rights Act.

103. There is a long – and well-documented – history of voting discrimination against American Indians in New Mexico. Although the Indian Citizenship Act of 1924 provided that "all non-citizen Indians born within the territorial limits of the United States be, and they are hereby, declared to be citizens of the United States," P.L. No. 68-175, 43 Stat. 253 (June 2, 1924) (codified at 8 U.S.C. § 1401(b)), New Mexico continued to deny American Indians the right to vote. In 1948, a three-judge federal court struck down Article 7, Section 1 of New Mexico's Constitution, which denied the right to vote to "Indians not taxed." *Trujillo v. Garley*, Civ. No. 1353 (D.N.M. filed Aug. 11, 1948) (three-judge court).[2]

104. In 1962, the Supreme Court of New Mexico rejected an effort to throw out over 2,200 ballots cast by Navajo voters living on Navajo Nation lands in San Juan and McKinley Counties in New Mexico, holding that voters living on Navajo lands in New Mexico were residents of the state and therefore eligible to register to vote. *Montoya v. Bolack*, 70 N.M. 196 (N.M. 1962).

105. In 1975, the Supreme Court of New Mexico dismissed claims by the state seeking to set aside a school board election and bond issue in San Juan County. The Court held the state had

---

[2] A copy of the bench ruling in *Trujillo* is available online. *See* App. C to Pls.' Br. in *Allen v. Merrell*, No. 8589 (Utah Oct. 8, 1956) (Abstract of Unreported Bench Op. in *Trujillo*), *available at* https://digitalcommons.law.byu.edu/cgi/viewcontent.cgi?article=3703&context=uofu_sc1.

no compelling interest in the exclusion of Navajo Nation and other reservation residents from a school district bond election; a limitation restricting the right to vote in school district bond elections to real estate owners violated the equal protection clause; and that the school district had the authority to use proceeds from the bond election to construct school buildings on tribal lands. *See Prince v. Board of Educ. of Cent. Consolid. Indep. Sch. Dist. No. 22*, 88 N.M. 548, 543 P.2d 1176 (N.M. 1975).

106. In 1984, a federal court held that New Mexico's statewide legislative redistricting plan unlawfully discriminated against American Indian voters. *See Sanchez v. King*, C.A. No. 82-0067-M (D.N.M. 1984).

107. Among all states evaluated for litigation to vindicate the rights of American Indian voters, "The dubious distinction for having the most litigation belongs to New Mexico, with nineteen cases." DANIEL MCCOOL ET AL., NATIVE VOTE: AMERICAN INDIANS, THE VOTING RIGHTS ACT, AND THE RIGHT TO VOTE 46 (Cambridge Univ. Press 2007); *see also id.* at 47, 53-55, 57-59, 61, 64, 77 (documenting examples of successful voting rights cases in New Mexico brought on behalf of American Indian voters).

108. The history of voting discrimination against American Indians in New Mexico also was detailed in a report that included testimony from a field hearing at the Isleta Pueblo. *See* Native Am. Rts. Fund, *Obstacles at Every Turn: Barriers to Political Participation Faced by Native American Voters* (June 4, 2020), *available at* https://vote.narf.org/obstacles-at-every-turn/.

109. San Juan County has been the subject of successful enforcement actions by the U.S. Department of Justice: to eliminate the County's use of at-large county commission elections, which unlawfully diluted the American Indian vote, *United States v. San Juan County*, No. 79-

507-JB (D.N.M. settled Apr. 8, 1980); to remedy the lack of language assistance for Navajo-speaking Limited-English Proficient voters, *see id.*; and to cure the County's failure to provide accessible polling places to disabled voters. *See* Settlement Agt. between United States and San Juan County under the Americans with Disabilities Act (Sept. 15, 2015), *available at* https://www.ada.gov/san_juan_co_pca/san_juan_sa.html.

110. Farmington, the most populous community in San Juan County, has a sordid history of racism and violence against American Indians.

111. In 1974, three students at Farmington High School kidnapped and murdered three Navajo men "as part of a practice known as 'Indian rolling,' in which white teenagers would assault Native individuals who were intoxicated and living homeless." Shannon Mullane, *After 45 years, have race relations improved in Farmington?*, THE DURANGO HERALD (Oct. 17, 2020).

112. The murders led to a lengthy investigation by the New Mexico State Advisory Committee to the U.S. Commission on Civil Rights, which issued a detailed 171 page report. *See* N.M. ADVISORY COMM. TO THE U.S. COMM'N ON CIV. RTS, THE FARMINGTON REPORT: A CONFLICT OF CULTURES (July 1975), *available at* https://babel.hathitrust.org/cgi/pt?id=uiug.30112045537286&view=1up&seq=2. It found "that many elected public officials in Farmington – as well as civic, business and professional leaders – have generally failed to assume a sense of active responsibility for promoting positive and productive relationships among the diverse segments of the population which they serve," including "the very complex social and economic problems arising out of this city's unique relationship with Navajo people residing on the reservation." *Id.* at 132.

113. In 2005, the New Mexico State Advisory Committee issued a follow-up report on the status of relations between non-Natives and Navajos and other American Indians in and around Farmington. *See* N.M. ADVISORY COMM. TO THE U.S. COMM'N ON CIV. RTS, THE FARMINGTON REPORT: CIVIL RIGHTS FOR NATIVE AMERICANS 30 YEARS LATER (Nov. 2005), *available at* https://www.usccr.gov/pubs/docs/122705_FarmingtonReport.pdf.

114. The Committee expressed concerns about "serious conflicts affecting the Central Consolidated school system in Shiprock" because of the termination of "several Native American educators," administrators discounting the advice of the Indian Education Committee, and lawsuits by the district "against at least two Navajo advocates and the *Farmington Daily Times* for libel and defamation" for raising their concerns. *Id.* at 53-54.

115. The Committee noted that no Navajos had been elected to the Farmington city council despite constituting nearly 20 percent (at that time) of the city's population. *Id.* at 54.

116. Policy-community relations with Navajo residents also was poor, with many witnesses saying "they are apprehensive and sometimes fearful of interaction with law enforcement." *Id.* at 54-55. There were widespread complaints about consumer practices including predatory lending tactics targeting American Indians. *Id.* at 55-56.

117. The Navajo Nation Human Rights Commission documented continued discrimination and barriers to Navajo civic engagement in a series of field hearings in border communities including Farmington in 2008 and 2009. *See* NAVAJO HUM. RELATIONS COMM'N, ASSESSING RACE RELATIONS BETWEEN NAVAJOS AND NON-NAVAJOS 2008-2009: A REVIEW OF BORDER TOWN RACE RELATIONS (July 2010), *available at* https://www.nnhrc.navajo-

nsn.gov/docs/NewsRptResolution/071810_Assessing_Race_Relations_Between_Navajos_and_Non-Navajos.pdf.

118. American Indians in the County continue to bear the effects of discrimination, which hinders their ability to participate effectively in the political process.

119. As a result of the history of official and private discrimination, American Indian residents have a lower socioeconomic status and lag behind Non-Hispanic White residents in a wide range of areas, including employment, income, education, and access to health care.

120. Navajo and other American Indian residents of San Juan County tend to have lower rates of voter turnout than the County's Non-Hispanic White residents.

121. No American Indian candidates of choice have been elected from District 2 under the Previous Plan. Two Navajo candidates lost to a Non-Hispanic White candidate in District 2 in the two most recent elections there, in 2014 and in 2018.

### COUNT ONE:
### VIOLATION OF SECTION 2 OF THE VOTING RIGHTS ACT OF 1965

122. Plaintiffs repeat and re-allege each and every allegation contained in all of the Paragraphs above, as if fully set forth herein.

123. As explained in detail above, San Juan County's American Indian population is sufficiently numerous and geographically compact to allow for the creation of two properly apportioned, single-member districts for electing members of the Board of Commissioners, in both of which American Indian voters would constitute a majority of greater than 60 percent of both the total population and the VAP.

124. The County's American Indian voters are politically cohesive, and elections in the County show a clear pattern of racially polarized voting. These facts satisfy the three "*Gingles* preconditions."

125. As explained in detail above, the totality of the circumstances establishes that the 2021 Redistricting Plan has the effect of denying American Indian voters an equal opportunity to participate in the political process and to elect representatives of their choice, in violation of Section 2 of the Voting Rights Act, 52 U.S.C. § 10301.

126. Unless enjoined by order of this Court, Defendants will continue to act in violation of Section 2 of the Voting Rights Act by administering, implementing, and conducting future elections for the Board of Commissioners using the current, unlawful 2021 Redistricting Plan.

## VI.   <u>**PRAYER FOR RELIEF**</u>

WHEREFORE, the Plaintiffs respectfully pray that the Court:

a.    Declare that the current 2021 Redistricting Plan violates Section 2 of the Voting Rights Act;

b.    Preliminarily and permanently enjoin Defendants, their agents and successors in office, and all persons acting in concert with, or as an agent of, any Defendants in this action, from administering, implementing, or conducting any future elections in San Juan County, New Mexico under the current 2021 Redistricting Plan;

c.    Order the implementation of a new districting plan for the San Juan County Board of Commissioners that complies with Section 2 of the Voting Rights Act, 52 U.S.C. § 10301;

      d.    Award Plaintiffs their reasonable attorneys' fees, pursuant to statute, and the costs and

disbursements of maintaining this action; and,

      e.    Order such additional relief as the interests of justice may require.

Respectfully submitted this 10th day of February, 2022.

*/s/ Leon Howard*

| | |
|---|---|
| Leon Howard | Raymond M. Williams* |
| Preston Sanchez | Jean Gabat* |
| **ACLU OF NEW MEXICO** | Daniel Nettles* |
| P.O. Box 566 | Virginia Weeks* |
| Albuquerque, NM 87103 | **DLA PIPER LLP (US)** |
| Telephone: (505) 266-5915 | One Liberty Place |
| lhoward@aclu-nm.org | 1650 Market Street, Suite 4900 |
| psanchez@aclu-nm.org | Philadelphia, PA 19103 |
| | Telephone: (215) 656-3300 |
| Doreen N. McPaul (Bar No. 17836) | Facsimile:   (215) 656-3301 |
| Navajo Nation Attorney General | raymond.williams@us.dlapiper.com |
| Paul Spruhan (Bar No. 12513) | jean.gabat@us.dlapiper.com |
| Assistant Attorney General | daniel.nettles@us.dlapiper.com |
| Jason Searle (Bar No. 151671) | virginia.weeks@us.dlapiper.com |
| **NAVAJO NATION DEPARTMENT OF JUSTICE** | |
| P.O. Box 2010 | Chad W. Dunn |
| Window Rock, AZ 86515-2010 | Sonni Waknin* |
| Telephone: (928) 871-6210 | Bernadette Reyes* |
| dmcpaul@nndoj.org | **UCLA VOTING RIGHTS PROJECT** |
| paspruhan@nndoj.org | 3250 Public Affairs Building |
| jasearle@nndoj.org | Los Angeles, CA 90095 |
| | Telephone: (310) 400-6019 |
| Ezra D. Rosenberg* | Facsimile:   (202) 783-0857 |
| James T. Tucker* | chad@uclavrp.org |
| Ryan Snow* | sonni@uclavrp.org |
| **LAWYERS' COMMITTEE FOR CIVIL RIGHTS** | bernadette@uclavrp.org |
| **UNDER LAW** | |
| 1500 K Street, N.W. Suite 900 | *Pro hac vice applications pending.* |
| Washington, D.C. 2005 | |
| Telephone: (202) 662-8600 | **ATTORNEYS FOR PLAINTIFFS** |
| erosenberg@lawyerscommittee.org | |
| jtucker@lawyerscommittee.org | |
| rsnow@lawyerscommittee.org | |